**In re VALLES MECHANICAL INDUSTRIES, INC., Debtor.**

**Robert TRAUNER, Trustee, Plaintiff,**

v.

**STEPHENSON ASSOCIATES, INC., Defendant.**

**Bankruptcy No. 81–02699A.
Adv. No. 81–1437A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

May 10, 1982.

Robert Trauner, Atlanta, Ga., for plaintiff.

Charles A. Ratz, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is before the Court on the plaintiff's Motion for Summary Judgment and the defendant's Motion to Dismiss or for Partial Summary Judgment and Motion to Stay arising out of the plaintiff's complaint alleging that a certain transfer in the amount of $41,784.44 from the debtor's estate to the defendant was a voidable preference as contemplated by 11 U.S.C. § 547. The defendant in its Motion to Dismiss and Motion for Stay refers to an adversary proceeding that is related to the instant adversary proceeding and concerns the same issues raised in the defendant's Motion to Dismiss, the principal issue being that since the debtor filed a voluntary Chapter 7 petition without proper corporate authorization, this defective filing cannot be remedied by a *nunc pro tunc* ratification by the debtor's board of directors, thus necessitating the dismissal of the debtor's petition. (See Adversary Proceeding No. 82–0181A.) The Court has ruled on the questions raised in Adversary Proceeding No. 82–0181A holding, *inter alia*, that the defects contained in the debtor's original Chapter 7 petition may be remedied *nunc pro tunc* by a subsequent ratification of the filing of its Chapter 7 petition by the debtor's board of directors. See 20 B.R. 355 (Bkrtcy.Ga.1982). Accordingly, for the reasons stated in the May 10, 1982 Order in Adversary Proceeding No. 82–0181A, the defendant's Motions to Dismiss and for Stay are denied.

The facts in the case *sub judice* as they relate to the question of preference are as follows:

The debtor was a general contractor and the defendant, Stephenson Associates, Inc. ("Stephenson"), was a subcontractor which

352

provided plumbing services. Valles' president was James Rodney Wallis and Stephenson's president was his brother, William Berry Wallis. In February of 1981, James R. Wallis and William B. Wallis began to discuss the possible cessation of operations at Valles. On April 14, 1981, upon receipt of approximately $108,000.00 for work Valles had done in Carrollton, Georgia, a check in the amount of $41,784.44 was drawn on the Valles' checking account and delivered to Stephenson. The invoices upon which this payment was based either arose prior to February 25, 1981, or were incurred on February 25, 1981 and February 27, 1981 in the amounts of $62.72 and $22,680.13 respectively, and were delivered on March 2, 1981. On April 27, 1981, Valles received an invoice in the amount of $11,017.51 from Stephenson. On July 2, 1981, Valles filed its voluntary petition under Chapter 7 of the Bankruptcy Code.

The issue presented by the above facts is whether and to what extent the April 14, 1981 transfer from Valles to Stephenson is a voidable preference within the ambit of 11 U.S.C. § 547(b). The defendant has implicitly recognized that $19,041.59 of the April 14, 1981 transfer is a voidable preference. (See Defendant's Brief in Support of its Motion to Dismiss or for Partial Summary Judgment and Motion to Stay proceedings at page 9.) The defendant has raised the question of whether $22,742.85 of these debts come within the exception to the preference provisions contained in 11 U.S.C. § 547(c)(2). Section 547(c)(2) of the Bankruptcy Code states that:

"The trustee may not avoid under this section a transfer—

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was *incurred*; [emphasis added]

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms."

The specific determination that must be made in the instant case is a decision as to when the debts comprising the invoices received by Valles on March 2, 1981 were incurred.

 The defendant has argued that the subject debts were incurred no earlier than the date of receipt of the March 2, 1981 invoices, since until that time no demand for payment could be said to have been made. In the absence of an agreement to the contrary, Georgia law provides that a debt represented by an open account is incurred for purposes of the running of the statute of limitations upon demand or upon a reasonable time after presentation. *Chandler v. Chandler*, 62 Ga. 612 (1879). However, the determination of when to begin the running of a statute of limitations is not directly analogous to the determination of when a debt was incurred for purposes of 11 U.S.C. § 547. "Incurred" does not necessarily imply "due." One noted commentary on the bankruptcy laws is of the opinion that a debt is incurred at the time that services are rendered or goods delivered and not at the time a bill is sent.

"The determination of when a debt is actually 'incurred' is critical. One view is that the debt is not incurred until an invoice is sent or demand for payment is made. The probably better view is that the debt is incurred whenever the debtor obtains a property interest and the consideration exchanged giving rise to the debt. Thus if goods are identified for shipment, unless the special agreement otherwise provides, the debtor has a special property interest and the debt is 'incurred.' Certainly when a debtor uses a utility the debt is incurred at the time the resource is consumed rather than when the invoice is sent. Thus in the above example, unless the utility bill is sent and

paid within a short time, there is a significant probability that payment of the utility bill will be made more than 45 days after the debt is incurred." 4 *Collier on Bankruptcy* ¶ 547.38, p. 547–121 (15th ed.).

This Court believes that the opinion expressed by *Collier* is the proper view as to when a debt is incurred. For example, the mere fact that a bill is never sent does not mean that an obligation has not been created, but it means only that payment is not yet due. Therefore, this Court finds that the debts which comprise the invoices received by the debtor on March 2, 1981 were incurred prior to March 1, 1981 and were therefore incurred more than forty-five days before the receipt of the April 14, 1981 payment for said debts. (See *In re McCormick*, 5 B.R. 726, 2 C.B.C.2d 1145 (Bkrtcy.N.D.Ga.1980).

■ The defendant has also alleged that $11,017.51 should be set off pursuant to 11 U.S.C. § 547(c)(4) against any voidable preference which this Court may find to exist concerning the April 14, 1981 transfer. Section 547(c)(4) of the Bankruptcy Code provides that the trustee may not avoid a transfer to the extent that after such transfer, the transferee gave new value to or for the benefit of the debtor. The defendant alleges that the $11,017.51 invoice of April 27, 1981 from it to Valles is evidence of an unsecured transfer from it to the debtor after April 14, 1981. The trustee's affidavit attached to the plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, Motion to Dismiss, and Motion for Stay authenticates and therefore brings before the Court the April 27, 1981 invoice. (See Exhibit A attached.) This invoice shows that $4,926.29 was debt incurred on or before April 14, 1981. When the 10% overhead plus 5% profit margins are added to this figure, $5,689.86 is shown to constitute debt incurred prior to April 14, 1981. Of the balance of the April 27, 1981 invoice, only $280.68 of the $5,327.65 balance clearly was incurred after April 14, 1981. There is a question of fact concerning the remainder of this invoice, and thus this question is not appropriate for the grant of summary judgment to the extent of $5,046.97.

■ The Court notes at this time that the defendant has not raised any issue concerning the requirements of § 547(b) that the April 14, 1981 transfer was (1) to or for the benefit of a creditor; (2) for or on account of an antecedent debt owed by the debtor before said transfer was made; (3) made on or within 90 days before the date of the filing of the petition; and (4) enabled the creditor to receive more than such creditor would have received if (a) this case were a case under Chapter 7 of the Bankruptcy Code; (b) the transfer had not been made; and (c) such creditor received payment of such debt to the extent provided by the provisions of this title. The defendant has raised some question concerning whether the debtor was insolvent at the time the April 14, 1981 transfer was made. The defendant has only stated that its president was unaware of the debtor's insolvency. (See paragraph seven of the Affidavit of William Berry Wallis.) This lack of knowledge does not constitute evidence of solvency sufficient to overcome the presumption of insolvency contained in 11 U.S.C. § 547(f).

Therefore, for the above-stated reasons, the plaintiff's motion for summary judgment is granted in part and denied in part. The defendant's motions to dismiss and for stay are denied and its motion for partial summary judgment is granted in part and denied in part. The Court finds that the defendant has received a voidable preference from the debtor to the extent of $36,456.75. The defendant has not received a voidable preference from the debtor to the extent of $280.68. The Court directs that an evidentiary hearing be set down to determine when $5,046.97 of the charges contained in the April 27, 1981 invoice were incurred.

IT IS SO ORDERED.

354

EXHIBIT A

## STEPHENSON ASSOCIATES
### INCORPORATED
*Est. 1881*
*Mechanical Contractors & Engineers*
SCOTTDALE, GEORGIA 30079

394–1722

540 KENTUCKY STREET

APRIL 27, 1981
JOB NO. 80209
INVOICE # 109

VALLES MECHANICAL INDUSTRIES INC.
3291 CHURCH STREET
SCOTTDALE, GEORGIA 30079

| | | | |
|---|---|---|---|
| | REF: | WILLOW SPRINGS CLUB HOUSE | |
| PAYROLL WEEK ENDING 3/3/81 | | $ 930.29 | |
| " " " | 3/10/81 | 1,262.63 | |
| " " " | 3/17/81 | 614.84 | |
| " " " | 3/24/81 | 1,272.62 | |
| " " " | 4/7/81 | 284.58 | |
| " " " | 4/14/81 | 561.33 | |
| " " " | 4/21/81 | 243.02 | |
| | | $5,169.31 | $ 5,169.31 |
| +18.6% PAYROLL TAXES & INSURANCE | | 5,169.31 | 961.49 |
| +4% SMALL HAND TOOLS | | 5,169.31 | 206.77 |
| FRINGE BENEFITS | | | 883.89 |
| AC&S | | | 290.20 |
| CONKLIN TIN PLATE | | | 497.08 |
| CARNES CO. | | | 396.56 |
| COWAN SUPPLY CO. | | | 576.99 |
| JENKINS METAL & SUPPLY | | | 145.49 |
| SOUTHEASTERN PLUMBING SUPPLY CO. | | | 23.82 |
| PIONEER RUBBER | | | 48.69 |
| STEPHENSON ASSOCIATES, INC. | | | 338.68 |
| | | | $ 9,538.97 |
| | +10% OVERHEAD | | 953.90 |
| | | | $10,492.87 |
| | +5% PROFIT | | 524.64 |
| | AMOUNT OF THIS INVOICE | | $11,017.51 |

| | |
|---|---|
| PREVIOUSLY BILLED | $29,680.13 |
| THIS BILLING | $11,017.51 |
| | $40,697.64 |