**In re KAHN & ASSOCIATES, INC., Debtor.**

**Robert S. BERNSTEIN, Disbursing Agent, Plaintiff,**

v.

**SUKOLSKY–BRUNELLE PHOTOGRAPHICS, Defendant.**

**Bankruptcy No. 89–2132 JLC.**
**Adv. No. 91–272.**

United States Bankruptcy Court, W.D. Pennsylvania.

Dec. 24, 1991.

**252**

Owen W. Katz, Pittsburgh, Pa., for disbursing agent.

John Vetica, Jr., Pittsburgh, Pa., for creditor.

## MEMORANDUM OPINION

JOSEPH L. COSETTI, Bankruptcy Judge.

The issue in this case is whether a payment made by the Debtor, Kahn & Associates, Inc., to Defendant, Sukolsky–Brunelle Photographics, can be avoided as a preferential transfer under 11 U.S.C. § 547 by the Chapter 11 Disbursing Agent.

The Debtor filed its Chapter 11 petition on August 16, 1989. The payment at issue concerns an invoice dated June 15, 1989 in the amount of $4,247.30. The Debtor paid $2,500 of this amount by check dated July 20, 1989. Neither party disputes that the transfer occurred on or within the 90–day preference period preceding the Debtors voluntary petition in bankruptcy.

In its Pretrial Memorandum, the Defendant argues that the Disbursing Agent has failed to prove the existence of all five elements for a preferential transfer under 11 U.S.C. section 547(b). Specifically, the Defendant argues that the $2,500 payment on July 20, 1989 was not "for or on account of an antecedent debt" as required under 11 U.S.C. section 547(b)(2). The Defendant argues that the debt arose under an April 26, 1989 agreement where specific payment terms were negotiated. The Defendant asserts that the July 20, 1989 payment was thus a "concurrent obligation" negotiated under the April agreement.

The Defendant's argument suggests that the debt was not incurred until the date payment was due because these were al-

leged to be the terms of the April agreement. Courts have generally held that a debt is incurred when a debtor becomes legally obligated to pay. *In re Iowa Premium Service Company,* 695 F.2d 1109 (8th Cir.1982), 12 B.R. 597 (Bkrtcy. S.D.Iowa 1981). The legal obligation to pay arises when a particular service is performed or when goods are received by the debtor. *Trauner v. Stephenson Assoc.,* 20 B.R. 350 (Bankr.N.D.Ga.1982); *Hertzberg v. H. Hirschfield & Sons, Inc.,* 23 B.R. 245 (Bankr.E.D.Mich.1982). The date of the invoice is not relevant in determining the date a debt is incurred. *Sandoz v. Fred Wilson Drilling Co.,* 695 F.2d 833, 9 C.B.C.2d 809 (5th Cir.1983).

■ Even if the Defendant's argument were followed, the July 20, 1989 payment was on account of an antecedent debt because the April oral agreement called for payment in sixty (60) days. The actual payment was made sixty-six (66) days after the invoice date. Under the oral agreement, the payment was six (6) days past due, so that even under the Defendant's argument, the payment was on account of an antecedent debt which arose on July 14, 1989. There is no other evidence that the parties intended that the transfer was to be a contemporaneous exchange.

The Disbursing Agent has established all of the elements of an avoidable transfer under 11 U.S.C. section 547(b). The Defendant has failed to prove the defense that the transfer was substantially contemporaneous under 11 U.S.C. section 547(c)(1).

■ Next, the Defendant seeks to defend on the ground that the transfer fell within the ordinary course of business exception contained in 11 U.S.C. section 547(c)(2). Central to the Defendant's argument is evidence that late payments or payments beyond the invoiced due date were in accordance with the prior business practices of the parties. The burden of proving the nonavoidability of a transfer under 11 U.S.C. section 547(c) is on the creditor. 11 U.S.C. § 547(g).

■ The Defendant asserts that the prior financial arrangement between it and the Debtor involved thirteen (13) transactions from November, 1988 through July, 1989. According to the Defendant's calculations, payments on these transactions were made on the average of seventy-four (74) days past the invoiced due dates. While the Plaintiff's estimate of the average number of days late payments were made by the Debtor differs, both parties would seem to agree that it was common practice for the Debtor to submit payments to the Defendant well past the invoiced due dates. Late payments may be within the "ordinary course of business" exception under 11 U.S.C. section 547(c). *In re Yurika Foods Corp. v. United Parcel Service,* 888 F.2d 42 (6th Cir.1989).

The general policy of the exception under section 547(c) is to honor normal financial arrangements between parties and to encourage the continuation of credit in order that a business might forestall or avoid bankruptcy. The exception serves to "encourage creditors to continue short term credit dealings with troubled Debtors in order to forestall bankruptcy rather than encourage it." *In re Morris,* 53 B.R. 190, 192 (Bankr.Or.1985).

A fundamental purpose of the "ordinary course of business" exception under section 547(c) is to deter the "race to the courthouse" by debtors struggling to maintain their businesses during periods of economic distress. The policy of encouraging the continuation of credit was recently affirmed by the United States Supreme Court where it held that the exception applied to payments made on long-term as well as short-term debts. *Union Bank v. Wolas,* — U.S. ——, 112 S.Ct. 527, 116 L.Ed.2d 514 (1991). In *Union Bank,* the Supreme Court held that while the trustee's voidance powers under section 547 seek to benefit creditors by furthering their interests in equal distribution in the event of bankruptcy, the exception under section 547(c) also serves to benefit creditors. The exceptions to the trustee's voidance powers do tend to result in favored distribution to the payee creditor, but the "ordinary course of business" exception favors the interests of *all* creditors by enabling the debtor to contin-

ue in business. *Union Bank,* — U.S. at ——, 112 S.Ct. at 533.

▓ We must reconcile the policies of discouraging creditors from attempting to "dismember the debtor during his slide into bankruptcy," the purpose of the trustee's avoidance powers, with the policy of encouraging creditors to do business with financially troubled debtors, the purpose of the exceptions to the avoidance provisions. *Union Bank,* — U.S. at ——, 112 S.Ct. at 533. In this case, we find that the payment to the defendant of $2,500 on July 20, 1989 was made in the "ordinary course of business" between the parties and excepted from the trustee's avoidance powers.

The Third Circuit has held that continuation of transactions does not include those transactions that differ from previous transactions in some significant way. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.,* 96 B.R. 474 (Bankr.N.J.1988). In this case, the Defendant has asserted that the business relationship between the parties is that of an open account arrangement. The Defendant provided professional photographic services to the Debtor and the Debtor made payments on account after the work was performed. The record indicates that purchase orders were executed on account even when the previous accounts had not been paid in full.

In April, 1989, the parties entered a business transaction that required the Debtor to pay a previous balance due in the amount of $648.99 before new credit would be extended. This arrangement is a slight variation from the parties' normal open account dealings. The Third Circuit in the *J.P. Fyfe* case held that "if the disputed transfer was attended by extreme variations from the past course of dealing between the parties which make sense only in the context of a creditor's recognition that the debtor was in financial difficulty, then the transfer is avoidable." *J.P. Fyfe* at 477.

On July 10, 1989, the Defendant telephoned the Debtor to remind it that payment under the April agreement was due. The open account arrangement was thus modified by the April agreement in two

ways: that the Debtor pay a previous balance due and that it comply with sixty-day payment terms where, in the past, the terms of payment did not necessarily adhere to strict payment terms.

We find that neither of these modifications were sufficiently "significant" so as to deny the defendants from asserting the "ordinary course of business" defense under section 547(c). The record suggests that the business relationship between the parties consisted of a series of erratic and late payments made by the debtor. The July 20, 1989 payment did not vary significantly from other payments made over the course of the parties' business relationship.

The defendant has not proved that the transfer in question was not made on or account of an antecedent debt under section 547(b)(2) but it proved that it is within the "ordinary course of business" exception under section 547(c).

The Motion of the Chapter 11 Disbursing Agent is denied. The July 20, 1989 payment to the defendant is not subject to the avoidance provision under section 547.