In re Samantha L. MITCHELL, Debtor.

Z. LESMAN, Plaintiff,

v.

Samantha L. MITCHELL, Defendant.

Bankruptcy No. 85 B 4331.
Adv. No. 85 A 0792.

United States Bankruptcy Court,
N.D. Illinois, E.D.

Feb. 27, 1987.

James G. Uzzell, Chicago, Ill., for plaintiff.

Zalutsky, Pinski & DiGiacomo, Chicago, Ill., for debtor/defendant.

## MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S RULE 9023 MOTION TO REOPEN PROOFS OR ALTER, AMEND OR MODIFY JUDGMENT

JACK B. SCHMETTERER, Bankruptcy Judge.

This cause comes before the Court upon motion of Z. Lesman ("Plaintiff") to reopen proofs or to modify this Court's September 5, 1986 Order rendering judgment after trial on Plaintiff's action to determine dischargeability of a debt. In the September 5, 1986 Order, the Court found only a por-

tion of the debt owed by Debtor to Plaintiff to be nondischargeable under Section 523(a)(2)(B) of the Bankruptcy Code. Plaintiff now asserts that the Court erred in not finding the entire debt nondischargeable. This Court has core jurisdiction over this matter. 28 U.S.C. § 157(b). For the reasons set forth below, Plaintiff's motion to reopen proofs or to alter or amend judgment is denied.

### The September 5, 1986 Order

The Court heard testimony on this case on July 15 and August 22, 1986. After final arguments on August 22, 1986, the Court gave findings of facts and conclusions of law from the bench in open court. These findings and conclusions were incorporated by reference into a Final Judgment Order signed September 5, 1986 and docketed September 9, 1986.

Plaintiff asked the Court to render Debtor's debt to Plaintiff nondischargeable under Sections 523(a)(2)(A) and 523(a)(2)(B) of the Bankruptcy Code. Plaintiff had extended credit to Debtor through renting her an apartment. The Court found that Debtor had published to Plaintiff two materially false written statements respecting the Debtor's financial condition with the intent to deceive—one on January 24, 1984 and another on March 26, 1985. Plaintiff was found to have reasonably relied on the March 26, 1985 false financial statement in extending credit after that date. Consequently, the Court held that Debtor's debt to Plaintiff after March 26 until April 27, 1985—the date Debtor vacated the premises—was nondischargeable under Section 523(a)(2)(B).

However, the Court found that Plaintiff had not relied on the January 24, 1984 false financial statement and therefore the debt between that date and March 26, 1985 was dischargeable. In the January 24 statement, Debtor had overstated her salary substantially. Plaintiff testified that she did not contact Debtor's employer, Kobs & Brady, to verify Debtor's salary. The Court relied on a footnote in the Seventh Circuit case *In re Bogstad*, 779 F.2d 370,

372–73 fn. 4 (7th Cir.1985) for the proposition that at least some small action of investigation by the creditor is required to show reliance. ("[T]he 1978 Code surely does not mean that a creditor may 'assume the position of an ostrich with its head in the sand and ignore facts that were readily available to it'." *Id.*, at fn. 4.) Because Plaintiff did not check the validity of the representation of Debtor's salary, the Court concluded that Plaintiff did not rely on the January 24, 1984 false financial statement.

In addition, Plaintiff prayed for attorney's fees pursuant to the terms of the lease. The lease was not signed by either Debtor or Plaintiff. There was no testimony whatsoever that the parties ever discussed or agreed to attorney's fees. The Court held that there was no agreement between the parties as to attorney's fees and therefore Plaintiff was not entitled to them.

### Plaintiff's Motion to Reopen Proofs or to Alter or Amend Judgment

Plaintiff moves pursuant to Bankruptcy Rule 9023 and F.R.Civ.P. 59 to reopen the proofs in this case, take additional evidence, or alter, amend or modify the September 5, 1986 judgment. Plaintiff claims to have erred in her testimony that she did not verify Debtor's employment. She now claims she did in fact verify such employment. In addition, Plaintiff asserts that the Court erred in finding that there was no agreement on attorney's fees. Finally, Plaintiff asks the Court to reconsider its conclusion that Plaintiff did not rely on Debtor's false financial statement of January 24, 1984.

### DISCUSSION

On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions and direct the entry of a new judgment, or it may alter or amend the judgment. F.R.Civ.P. 59. There are three possible grounds for a new

trial or to alter or amend a judgment in a court-tried action: manifest error of law; manifest error of fact; or newly discovered evidence. *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). Moreover, a motion for new trial or to alter or amend a judgment cannot be used to raise arguments that could and should have been made before the judgment issued, or to argue a case under a new legal theory. *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986).

### Plaintiff's Changed Testimony

 Plaintiff seeks to change her testimony to the effect that she did in fact verify the employment of Debtor prior to Debtor moving into the premises Plaintiff leased to her. Plaintiff asserts that she originally testified in error because of a bad reaction to an anti-arthritis drug, and because of her worries about her husband's health and about testifying.

The ground for new trial of "manifest error of fact" refers to the *Court* making a mistaken finding of fact based on the testimony given at the original trial. A new trial may not be given merely because a witness claims she made a mistake in her testimony. Even if Plaintiff was tired and nervous at trial, her attorney had ample opportunity to correct her alleged mistake in testimony by asking the appropriate questions. The interests of justice would not be served by allowing a witness to change her answer to the "right" answer after being told by the court that she has lost her case because she gave the "wrong" answer. The Court will not reopen the proofs to take into evidence the offer of proof of Plaintiff's changed testimony.

### Agreement as to Attorney's Fees

Plaintiff next asserts that the Court erred in the September 5, 1986 Order in not giving effect to the terms of the lease and awarding Plaintiff her attorney's fees pursuant to that lease. Plaintiff then rehashes arguments originally rejected at trial and raises an apparently new argument of detrimental reliance. Plaintiff may not use this motion to raise arguments that could and should have been made before judgment issued, or to argue a case under a new legal theory. *FDIC v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). Moreover, Plaintiff presents no analysis or authority to demonstrate that the court erred in finding that there was no agreement as to attorney's fees. Therefore, the Court will not alter this holding of the September 5, 1986 Order.

### Reliance on the January 24, 1984 Statement

Plaintiff next asks that the Court reconsider its conclusion of law that Plaintiff did not rely on Debtor's false financial statement of January 24, 1984. According to Plaintiff's interpretation of the case law, a creditor need not investigate to show reasonable reliance unless there is some sort of "red-flag" or indication of falsity. Plaintiff concludes that because there was no red-flag, someone of Plaintiff's position and capabilities had no duty to investigate. Therefore, Plaintiff concludes that Plaintiff reasonably relied on Debtor's false financial statement of January 24, 1984, and consequently the entire debt owed by Debtor to Plaintiff is nondischargeable.

Section 523(a)(2)(B) of the Bankruptcy Code provides:

(a) A discharge under section 727, 1141, 1228(a), 122(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(B) use of a statement in writing—

(i) that is materially false;

(ii) respecting the debtor's or an insider's financial condition;

(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and

(iv) that the debtor caused to be made or published with intent to deceive.

The creditor seeking to have a debt found nondischargeable must prove all of the elements by clear and convincing evidence, a burden of proof more stringent than the standard burden in civil cases of a preponderance of the evidence. *IFG Leasing Co. v. Vavra (In re Harms)*, 53 B.R. 134, 140 (Bankr.D.Minn.1985); *First Security Bank of Fox Valley v. Ardelean (In re Ardelean)*, 28 B.R. 299, 301 (Bankr.N.D.Ill. 1983). This Court has already ruled that Plaintiff has proven by clear and convincing evidence elements (i), (ii) and (iv) for the January 24, 1984 statement. Therefore, the limited question before the Court on this motion to alter or amend the judgment is whether Plaintiff both actually and reasonably relied on the January 24, 1984 statement.

### Actual Reliance

Upon review, the Court modifies its views to the following extent: Plaintiff did in fact actually rely on the January 24, 1984 statement. Actual reliance may be shown by unchallenged testimony that the creditor would not have extended the credit if it had known the truth. *Martin v. Bank of Germantown (In re Martin)*, 761 F.2d 1163, 1166 (6th Cir.1985); *First National Bank of Lansing v. Kreps (In re Kreps)*, 700 F.2d 372, 376 (7th Cir.1983).

In this case, Plaintiff testified that if she had known that Debtor's salary was much less then that listed on the January 24, 1984 statement, then she would not have allowed Debtor to move into her apartment. This testimony was unchallenged. Therefore, Plaintiff did adequately show

actual reliance on the January 24, 1984 statement.

### Reasonable Reliance

However, that Plaintiff actually relied on the false statement is insufficient to establish nondischargeability under Section 523(a)(2)(B). The question as properly framed is whether Plaintiff's actual reliance was reasonable. The standard for measuring the reasonableness of a creditor's reliance is an objective one.[1] *Pacific Int'l. Development Corp., Ltd. v. Sullivan (In re Sullivan)*, 58 B.R. 692, 699 (Bankr. D.Mass.1986); *IFG Leasing Co. v. Vavra (In re Harms)*, 53 B.R. 134, 140 (Bankr.D. Minn.1985); *Belcher Oil Co. v. Price (In re Price)*, 48 B.R. 211, 213 (Bankr.S.D.Fla. 1985).

The emerging standard of reasonableness requires the Court to measure the creditor's actual conduct against three factors. *IFG Leasing Co. v. Vavra (In re Harms)*, 53 B.R. 134, 141 (Bankr.D.Minn. 1985).

1. *The creditor's standard practices in evaluating credit worthiness.* Absent other factors, there is reasonable reliance where the creditor follows its normal business practices. *See Norwest Card Services v. Barnacle (In re Barnacle)*, 44 B.R. 50, 54 (Bankr.D.Minn.1984); *First Security Bank of Fox Valley v. Ardelean (In re Ardelean)*, 28 B.R. 299, 301–02 (Bankr.N. D.Ill.1983).

2. *The standards or customs of the creditor's industry in evluating creditworthiness.* For example, under this

---

1. Plaintiff cites the cases of *LaFata v. Burklow (In re Burklow)*, 60 B.R. 728 (Bankr.S.D.Cal. 1986) and *Montalto v. Sobel, Inc. (In re Sobel)*, 37 B.R. 780 (Bankr.E.D.N.Y.1984) as support for the proposition that the test of reasonable reliance is subjective. Plaintiff then argues that it should be taken into account that she is foreign-born. First, this is of little significance. Persons of foreign birth cannot be said, merely because they are foreign born, to have less than normal business sense. Plaintiff in particular has had some commercial experience as she apparently runs the family business, L & S Tailors. In any case, *Burklow* and *Sobel* were cases decided under 523(a)(2)(A) and not

523(a)(2)(B). The court in *Sobel* specifically held that under 523(a)(2)(A), the creditor need not show that her reliance was reasonable, and accordingly used a subjective test of reliance. *Sobel*, 37 B.R. at 785. *Burklow* merely adopted the subjective standard enunciated in *Sobel*. *Burklow*, 60 B.R. at 732. Therefore, *Sobel* and *Burklow* do not stand as precedent for what constitutes reasonable reliance under 523(a)(2)(B). The individual characteristics of Plaintiff will not be taken into account. The proper standard is whether her reliance was reasonable according to a reasonably prudent individual landlord of one multi-unit dwelling.

factor, commercial lenders such as banks or credit agencies are required to conduct a commercially reasonable investigation of the information that has been supplied by a debtor before their reliance is reasonable. *See Thorp Credit Inc. of Ohio v. Bright (In re Bright)*, 57 B.R. 233, 235 (Bankr.N. D.Ohio 1986); *Municipal Credit Union v. Brown (In re Brown)*, 55 B.R. 999, 1004 (Bankr.E.D.N.Y.1986); *Green River Production Credit Ass'n. v. Bridges (In re Bridges)*, 51 B.R. 85, 89 (Bankr.W.D.Ky. 1985). A possible exception to this requirement is where there is an indication of reliability, such as a long-standing relationship between the creditor and debtor. *Northern Trust Co. v. Garman (In re Garman)*, 625 F.2d 755 (7th Cir.1980)

3. *The surrounding circumstances existing at the time of the Debtor's application for credit.* Under this factor, courts have found reliance to be unreasonable where the creditor knew or should have known the information supplied by the debtor was inaccurate, that is, where there are so-called "red flags." *See, e.g., In re Bogstad,* 779 F.2d 370 (7th Cir.1985) (representations of landowner about value of own real estate should routinely evoke skepticism and spur investigation); *Oppenheimer v. Reder (In re Reder)*, 60 B.R. 529 (Bankr.D.Minn.1986) (existence of continuing, unmet financial need is red flag putting creditor/insider on notice financial statement might be false); *Walter E. Heller & Co. v. Byrd (In re Byrd)*, 41 B.R. 555 (Bankr.E.D.Tenn.1984) (creditor knew at outset financial statement was not accurate); *Thorp Credit Inc. of Ohio v. Saunders (In re Saunders)*, 37 B.R. 766 (Bankr. N.D.Ohio 1984) (financial statement did not contain sufficient information to present an accurate portrait of the debtor's financial condition for credit analysis); *Lussier v. Barrup (In re Barrup)*, 37 B.R. 697 (Bankr.D.Vt.1983) (creditor's own investigation revealed likelihood that debtor's financial statement was false or incomplete).

In this case, as to the third element of the surrounding circumstances present here, Plaintiff is an individual landlord of a 13–unit apartment building. She also operates the family business, L & S Tailors. Debtor claimed on the January ·24, 1984 statement that she had an annual salary of $25,000 when in fact she received $14,200 per year plus bonuses and child support for four children. Debtor worked as a legal secretary or office clerk.

That a legal secretary or office clerk should list her salary as $25,000 is not so obviously wrong as to be a "red flag." There is no evidence to show that Plaintiff knew or should have known that the listed salary was inaccurate. Therefore, there is nothing about the surrounding circumstances of this case to show that Plaintiff was put on notice to investigate before her reliance could be considered reasonable.

However, the real question presented here is whether it is reasonable for an individual landlord of a multi-unit apartment building to fail to telephone a potential tenant's employer and verify the potential tenant's salary. In other words, do landlords in Plaintiff's situation have a duty of minimal investigation because, for example, financial information supplied by potential tenants is suspect a good portion of the time. The answer is determined under the first two elements of the objective test of reliability—the creditor's own standards and industry standards.

In this case, Plaintiff testified that it was her usual practice to check up on information supplied by potential tenants but that she did not do so with Debtor. There was no testimony presented on the standard practice of landlords in evaluating the credit-worthiness of potential tenants.

In *Ponderosa, Inc. v. Consin (In re Consin)*, 38 B.R. 505 (Bankr.E.D.Tenn.1984), the court held that a lessor has a duty to investigate before it may reasonably rely on financial statement of potential lessees. Ponderosa, a nation-wide restaurant chain, subleased a restaurant to Consin for a rent of $3,000 per month. Ponderosa had delivered the key to Consin before executing the sublease and before obtaining a financial

statement from Consin. The sublease was executed after Consin submitted his financial statement. The court held that Ponderosa delivered the leasehold premises to Consin prior to his delivery of the false financial statement and thus the financial statement could not have been relied upon by Ponderosa in its decision to sublet the restaurant to Consin. The court also held that, given that Ponderosa had absolutely no prior dealing with Consin and knew absolutely nothing about him or his business background and took no steps to verify the accuracy of his financial statement, Ponderosa's reliance on his financial statement was not reasonable.

Although the holding of *Consin* is persuasive it is not determinative here. *Consin* took place in a commercial setting where the risks were much higher than here. It would not be fair to hold an individual landlord with one multi-unit building to the standard of investigation of a nation-wide restaurateur with over 600 restaurants.

However, it would not be unfair to hold Debtor to her own standard, especially given that this standard is the only evidence of what is reasonable under the circumstances. Plaintiff knows better than anyone what is necessary to determine the creditworthiness of her potential tenants. She herself apparently determined—before any contact with Debtor—that it was necessary to check up on the information supplied by potential tenants. This was her usual practice. She did not follow it and therefore did not reasonably rely on the false statement as to Debtor's income. The Court therefore concludes again that Plaintiff has not shown by clear and convincing evidence that Plaintiff reasonably relied on Debtor's false financial statement of January 24, 1984.

## CONCLUSION

It is therefore ORDERED that Plaintiff's Motion to Reopen Proofs or to Alter or Amend Judgment is denied in its entirety.