**In re HARTWIG POULTRY, INC., Debtor(s).**

**HARTWIG POULTRY, INC., Plaintiff(s),**

v.

**CW SERVICE, et al., Defendant(s).**

Bankruptcy No. 84–0256.
Related Case: 82–00227.

United States Bankruptcy Court,
N.D. Ohio, W.D.

Feb. 10, 1987.

See also, Bkrtcy., 57 B.R. 236.

Hunter & Schank, Toledo, Ohio, for plaintiff.

Gerald G. Gline, Rochelle Park, N.J., for Target.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion For Summary Judgment filed by the Plaintiff against the Defendant Target Industries (hereinafter Target). The parties have filed their arguments relative to the merits of this Motion and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed those arguments as well as the entire record in this case. Based upon that review and for the following reasons the Court finds that Summary Judgment should be entered for the Plaintiff.

## FACTS

The facts in this case do not appear to be in serious dispute. On or about July 20, 1982, the Debtor-In-Possession ordered certain products from Target. Although the exact nature of these items is unclear, it appears that it included some plastic products which were used in the Debtor-In-Possession's operations. It also appears that the items were shipped to the Debtor-In-Possession, and that an invoice for the shipment was issued on or about July 23, 1982. Target admits that the items were received by the Debtor-In-Possession on July 26, 1982.

On or about August 20, 1982, the Debtor-In-Possession issued a check to Target in the amount of $10,039.68. This instrument was issued as payment for the July 23, 1982 shipment of merchandise. While Target admits that it received the Debtor-In-Possession's check on or about September 6, 1982, the evidence reflects that the check was not paid by the drawee bank until September 13, 1982.

The Debtor-In-Possession filed its voluntary Chapter 11 Petition with this Court on October 19, 1982. In an effort to collect assets for the estate, the Debtor-In-Possession filed the above entitled adversary action. In this action, the Debtor-In-Possession alleges that the payment made to Target was an avoidable preferential transfer under the provisions of 11 U.S.C. § 547(b).

The Motion presently before the Court seeks a summary adjudication of this adversary action. In support of this Motion, the Debtor-In-Possession has offered copies of Target's invoice and the check which was issued to Target in payment of the invoice. It has also offered the affidavit of counsel for the Debtor-In-Possession, wherein he avers to the fact that as of the filing of the Motion the Debtor-In-Possession had approximately $35,002.86 in assets. A review of the Debtor-In-Posses-

sion's schedules finds that at the time the petition was filed the Debtor-In-Possession had approximately $1,888,000.00 in unsecured obligations, $2,666,000.00 in secured obligations, and $4,100,000.00 in total assets.

In opposition to the Motion, Target has argued that the obligation should not be considered as owing until thirty days subsequent to the issuance of the invoice. This argument is based on the fact that the invoice bore a statement that payment on the invoice was due thirty days after its issuance. Target has also argued that the date on which the Debtor-In-Possession tendered the check should be considered the date on which a transfer occured. As a result of these arguments, Target contends that certain defenses available under the provisions of 11 U.S.C. § 547 are applicable.

### LAW

Prior to the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. 98–353, the provisions of 11 U.S.C. Section 547 stated in pertinent part:

(b) ... the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of the creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange;

(2) to the extent that such transfer was—

(A) in payment of a debt incurred in the ordinary course of business or financial affairs of the debtor and the transferee;

(B) made not later than 45 days after such debt was incurred;

(C) made in the ordinary course of business or financial affairs of the debtor and the transferee; and

(D) made according to ordinary business terms.

The pre-amendment version of that section is applicable to this adversary proceeding, inasmuch as the Chapter 11 case was filed prior to the effective date of the amendments. *See*, P.L. 98–353 Section 553(a).

■ Under these provisions, a trustee or a debtor-in-possession, *see*, 11 U.S.C. Section 1107, may avoid the transfer of an interest of the debtor in property which was made to a creditor on account of an antecedent debt within ninety days prior to the petition if the debtor was insolvent at the time of the transfer and if the transfer enables the creditor to receive more than they would have received in a Chapter 7 proceeding had the transfer not been made. *Allison v. First Nat. Bank & Trust Co. (In re Damon)*, 34 B.R. 626 (Bkcy.D.Kan. 1983).

■ A trustee can not avoid a transfer which was intended by the debtor, and which was, in fact, a contemporaneous exchange for new value. *Ray v. Security Mutual Finance Corp. (In re Arnett)*, 731 F.2d 358 (6th Cir.1984). The most determinative factor in assessing whether or not a transfer was a contemporaneous exchange is the intent of the parties to create such an exchange. *McClendon v. Cal-Wood Door (In re Wadsworth Bldg. Components, Ins.)*, 711 F.2d 122 (9th Cir.1983). A trustee may also not avoid any transfer to the

extent it was payment of an ordinary business expense which was incurred within forty-five (45) days prior to the time the transfer was made. *Quinn v. TTI Distribution Corp. (In re Moran Air Cargo, Inc.)*, 30 B.R. 406 (Bkcy.R.I.1983). It is generally held that when a transfer to a creditor is accomplished by check, the transfer does not occur until the check is honored by the drawee bank. *See, Harris v. Harbin Lumber Co. of Royston, Inc. (Matter of Ellison)*, 31 B.R. 545 (Bkcy.M.D. Ga.1983). *Hartwig Poultry, Inc. v. American Eagle Poultry, Inc. (In re Hartwig Poultry, Inc.)*, 56 B.R. 332 (Bkcy.N.D.Ohio 1985).

A party is entitled to a summary adjudication if they can demonstrate that there are no genuine issues as to any material fact and that they are entitled to judgment as a matter of law. *See,* Bankruptcy Rule 7056, Federal Rules of Civil Procedure 56. However, a plaintiff must be able to demonstrate all elements of a cause of action in order to prevail. *See, Chalmers v. Benson (In re Benson)*, 33 B.R. 572 (Bkcy.N.D. Ohio 1983), *Simmons v. Landon (In re Landon)*, 37 B.R. 568 (Bkcy.N.D.Ohio 1984).

▮▮▮▮ A review of the facts finds that the Debtor-In-Possession issued a check to Target and that Target negotiated this check on account of its invoice to the Debtor-In-Possession. This transfer and negotiation constitutes a transfer of property of the Debtor for purposes of 11 U.S.C. § 547(b). *See, Hartwig Poultry, Inc. v. American Eagle Poultry, Inc.,* supra. The facts also indicate that the debt which was created by Target's shipment of goods served as the basis for the Debtor-In-Possession's payment. Although the debt arose at the time goods were shipped, the Debtor did not tender payment until September 6, 1982. As a result, the debt for which payment was made was an antecedent debt. *See, Hartwig Poultry, Inc. v. C.W. Service (In re Hartwig Poultry, Inc.)*, 56 B.R. 320 (Bkcy.N.D.Ohio 1985).

A further review of the facts finds that the execution of the check, its delivery to Target, and, the negotiation of the check at the drawee bank are all events which occured within ninety days prior to the filing of the Debtor-In-Possession's petition. It also finds that the check was honored by the drawee bank fifty-two days after the date the invoice was issued. It appears that the date of the invoice was the date on which the goods were shipped to the Debtor-In-Possession. In addition to these facts, the provisions of 11 U.S.C. § 547(f) provide that the Debtor-In-Possession is presumed to be insolvent during the ninety day pre-filing period. In light of these facts, it must be concluded that the elements set forth in 11 U.S.C. § 547(b)(1), (b)(2), (b)(3), and (b)(4)(A) have been adequately demonstrated for purposes of this action.

▮▮▮▮ The only element which remains to be established is that addressed by 11 U.S.C. § 547(b)(5). Under this section, the trustee must be able to show that the creditor received more as a result of the transfer than would have been received in a Chapter 7 liquidation had the transfer not been made. A review of the Debtor-In-Possession's schedules finds that the Debtor-In-Possession was insolvent, *see,* 11 U.S.C. § 101(26), at the time the petition was filed. As has been indicated in prior decisions in this case, *see, Hartwig Poultry, Inc. v. C.W. Service,* supra, after the deduction of secured property and secured claims, the Debtor-In-Possession had approximately $1,800,000.00 in unsecured obligations, and $170,000.00 in available assets. After payment of expenses, this would result in less than a ten percent dividend to unsecured creditors. The affidavit offered in support of the present Motion indicates that the return will be significantly less than it might have been on the date the petition was filed. Since the transfer in question enabled Target to receive one hundred percent of the amount owed by the Debtor-In-Possession, and since Target would have participated in the estate as a general unsecured creditor, it must be concluded that Target received more as a result of the Debtor-In-Possession's transfer than it

would have received in a Chapter 7 liquidation had the transfer not been made. Accordingly, the provisions set forth in 11 U.S.C. § 547(b)(5) have been satisfied. Inasmuch as the establishment of this element completes the requirements for the avoiding of a transfer under 11 U.S.C. § 547(b), it must also be concluded that there is not question of material fact as to the avoidability of the transfer, and that the Debtor-In-Possession is entitled to judgment as a matter of law.

■ The Defendant has argued that the payment of this obligation falls within the exception to avoidability set forth in 11 U.S.C. § 547(c)(2). In that provision, any payment made in the ordinary course of business and made within forty-five days after the debt was incurred is not avoidable under § 547(b). Although the evidence indicates that the debt to Target was incurred in the ordinary course of business, it is also evident that payment was not made within the forty-five day period. In computing that period, the date on which the debt was incurred must first be established. As has been indicated, the debt is considered to be incurred on the date the Debtor becomes obligated to the Defendant. *See, Hartwig Poultry, Inc. v. C.W. Services*, supra. Despite the fact the invoice stated that payment was due thirty days after its issuance on July 23, 1982, this statement is not sufficient so as to preclude the Defendant's ability to enforce the obligation prior to the expiration of that time. Such a preclusion does not appear to be part of the contract which existed between the parties. Furthermore, since the transfer of property to the Debtor-In-Possession is the event which actually gives rise to the Debtor-In-Possession's liability, the date on which that transfer occurs is the date upon which the obligation actually arose.

■ As for the Debtor-In-Possession's transfer to the Defendant, the evidence indicates that this transfer took place fifty-two days after the shipment of goods to the Debtor-In-Possession. As has been previously indicated, when payment is made by check, a transfer occurs only upon the negotiation of the check by the drawee bank. The fact that the Debtor-In-Possession issued a check against its account and delivered the check to Target does not divest the Debtor-In-Possession of its ability to exercise dominion over the funds in its accounts. Since the monies in the Debtor-In-Possession's account is the property which is actually transferred, the date on which they are transferred must be the focus of the inquiry. Until the funds have been debited from the account, there has not been a sufficient divestiture of control over those funds for purposes of 11 U.S.C. § 547(b) and (c)(2). Because, in the present case, the negotiation by the drawee bank did not happen until after the forty-five day period expired, the defense offered by 11 U.S.C. § 547(c)(2) is not available.

■ The Defendant has also argued that the avoidability of the transfer is subject to the exception set forth in 11 U.S.C. § 547(c)(1). In that provision, any transfer which was intended by the parties as a contemporaneous exchange of new value and which was, in fact, a substantially contemporaneous exchange is not avoidable under 11 U.S.C. § 547(b). In the present case, there is nothing in the record which demonstrates the intent of the parties relative to the question of whether or not a contemporaneous exchange was intended. However, even if such evidence could be shown, the forty-five day period which had elapsed between the creation of the debt and the deliverance of the check is too protracted a period for a contemporaneous exchange. As a result, it must be considered to have been an antecedent debt. *See, Foreman Industries, Inc. v. Broadway Sand & Gravel (Matter of Foreman Industries, Inc.)*, 59 B.R. 145 (S.D.Ohio 1986). Accordingly, the exception under 11 U.S.C. § 547(c)(1) is not applicable in this action.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Motion For Summary Judgment be, and is hereby, GRANTED.

It is FURTHER ORDERED that the transfer be, and is hereby, AVOIDED.

It is FURTHER ORDERED that judgment be, and is hereby, entered against Target Industries in the amount of Ten Thousand Thirty-nine and 68/100 Dollars ($10,039.68).